# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-0494V
UNPUBLISHED

| | |
|---|---|
| VINCENT BEGAY,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: August 12, 2021<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Statutory Six Month<br>Requirement  Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Leigh Finfer*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Claudia Barnes Gangi*, U.S. Department of Justice, Washington, DC, for Respondent.

## FINDINGS OF FACT[1]

On April 23, 2020, Vincent Begay filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a right shoulder injury related to vaccine administration ("SIRVA") caused in fact by the influenza ("flu") vaccine he received. Petition at 1, ¶¶ 2, 15. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished Fact Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

A disputed factual issue has arisen regarding whether Petitioner's injury meets the Act's severity requirement. For the reasons discussed below, I find Petitioner suffered the residual effects of his injury for more than six months.

## I.  Relevant Procedural History

Along with the Petition, Mr. Begay filed the affidavit and the medical records required by the Vaccine Act. Exhibits 1-8, ECF No. 1; *see also* Section 11(c) (regarding the medical records required under the Vaccine Act). Following the June 12, 2020 initial status conference, Respondent's counsel filed a status report that in August indicating that she had identified no outstanding medical records and had identified one factual issue, the neurologic nature of Petitioner's injury, which may prevent him from satisfying the Table definition for SIRVA.[3] ECF No. 12. On March 19, 2021, Petitioner forwarded a demand and supporting documentation to Respondent. ECF No. 17.

On July 9, 2021, Respondent filed his Rule 4(c) Report opposing compensation. ECF No. 19. He argued that Petitioner could not satisfy the Vaccine Act's severity requirement (*id.* at 5), and that there is evidence of a potential alternative cause "that preclude[s] a finding of a Table SIRVA" (*id.* at 6). Respondent also maintained that Petitioner had not provided sufficient evidence to prove actual causation. *Id.* Indeed, he asserted that "[a]s a general matter, because SIRVA is an injury defined by administrative rulemaking, . . . [P]etitioner may not pursue a cause-in-fact SIRVA claim." *Id.* at 6 n.1.

## II.  Issue

I have determined that a factual finding regarding the severity of Petitioner's injury is appropriate at this time. At issue is whether Petitioner continued to suffer the residual effects of his alleged SIRVA for more than six months. Section 11(c)(1)(D)(i) (statutory six-month requirement).

## III.  Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to

---

[3] It is important to note that Petitioner alleged a causation-in-fact claim. Petition at ¶ 9.

facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV.   Finding of Fact

I make the following findings after a complete review of the record, including all medical records, affidavits, and Respondent's Rule 4(c) Report:

- Petitioner received the flu vaccine in his right deltoid on October 25, 2018, while working as a heavy equipment operator at the Peabody mines in Arizona. Exhibit 1; *see, e.g.,* Exhibit 2 at 13 (indicating Petitioner received the vaccine at a work clinic). The vaccine was administered at a health fair conducted through the Kayenta Health Clinic ("Kayenta Clinic"). Exhibit 3 at 6.

- On December 6, 2018, Petitioner sought medical treatment at the Kayenta Clinic, located in Kayenta, Arizona, complaining of sharp pain and weakness in his left arm since receiving the flu vaccine. Exhibit 3 at 7. X-rays were taken, and Petitioner was prescribed NSAIDs.[4] Exhibit 3 at 8, 16 (x-ray results).

- Petitioner returned to the Kayenta Clinic one week later to review the x-rays results. Exhibit 3 at 9. Reporting a slight improvement in his pain, he again indicated it began after he received the flu vaccine in October. *Id.* Petitioner received the Naproxen[5] previously prescribed to him, and an MRI was proposed if he showed no improvement. Exhibit 3 at 9.

- Seen the following week on December 19, 2018, Petitioner again reported a slight improvement in pain, but added that it was worse at night and interfered with his sleep. Exhibit 3 at 11. He added that he experienced weakness when lifting his right arm. Petitioner was diagnosed with right

---

[4] NSAIDs stands for non-steroidal anti-inflammatory drugs. MEDICAL ABBREVIATIONS at 422 (16th ed. 2020).

[5] Naproxen is a nonsteroidal anti-inflammatory drug that is used in the treatment of pain and inflammation and conditions such as osteoarthritis and rheumatoid arthritis. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY ("DORLAND'S ") at 1232 (32th ed. 2012).

4

shoulder pain, nerve impingement, and rotator cuff tendonitis. An MRI was scheduled with a follow-up orthopedic appointment "if significant pathology is found on [the] MRI." *Id.*

- The next day, Petitioner visited the same day clinic at Fort Defiance Indian Hospital ("FDIH"), located on the border of Arizona and New Mexico, which appears to be the state where Petitioner resides. Exhibit 2 at 13; *see, e.g.,* Exhibit 8 at 1 (providing Petitioner's address in New Mexico); Exhibit 2 at 15 (indicating Petitioner lives and works in different locations). Stating that he had been advised to seek an MRI, Petitioner described weakness and a lack of arm control after receiving an improperly administered flu vaccine on October 25 at a clinic held at work. It was noted that he "[d]oesn't report pain in the area." Exhibit 2 at 13. The assessment included a "concern for soft tissue, parsonage turner syndrome." *Id.* at 16.

- The MRI, performed in Flagstaff, Arizona on January 9, 2019, revealed fluid in the subacromial/subdeltoid bursa, indicative of bursitis; evidence of osteoarthritis; evidence of a partial thickness rotator cuff tear at the infraspinatus tendon and associated tendinopathy; and findings indicating a possible tear at the shoulder labrum. Exhibit 4 at 1-2. During a January 16, 2019 telephone phone call, a physician at the Kayenta Clinic explained the results of the MRI to Petitioner and provided him with a referral to an orthopedist. Exhibit 3 at 13.

- On January 23, 2019, Petitioner was seen again at the FDIH same day clinic for right shoulder pain which he attributed to the flu vaccine he described as improperly administered on October 25, 2018. Exhibit 2 at 19. Although he reported no pain at that time, he "state[d] he notices his right shoulder pain at night." *Id.* It was noted that Petitioner "needs ortho to clear him to return to work." *Id.* at 21.

- Petitioner was first seen by an orthopedist at FDIH on February 6, 2019. Exhibit 2 at 33. At that visit, he reported substantial improvement and no current pain but pain at night at a level of six out of ten. The orthopedist's assessment revealed a painful arc of the right shoulder. Under the section titled "Plan," it was indicated that Petitioner could return to work and would not be pursuing physical therapy as he works out of state. Petitioner declined a cortisone injection. *Id.*

- Petitioner did not seek treatment again until May 13, 2019, when he was seen by the FDIH orthopedist, complaining of "shoulder pain when he sleeps" and seeking guidance before being administered a shingles vaccine. Exhibit 2 at 34. Although he reported no current pain (as he did in February 2019), the assessment again revealed a painful right shoulder arc. At this May 13 visit, he indicated he "ha[d] been symptom free for 2 months but was concerned about the [rotator cuff tear] tear sen [sic] 4 months ago." *Id.* Another MRI was planned. *Id.*

- When Petitioner returned to the FDIH orthopedist to discuss the results of the second MRI, performed on July 10, 2019, he reported no current pain and only right arm weakness in the morning. Exhibit 2 at 36. It was noted that the second MRI revealed only a small 1.5 mm glenoid labral tear and some fatty infiltration of [the] teres muscle." *Id.* The orthopedist assessed Petitioner as experiencing "weakness in the am post flu shot" and opined that "it is remotely possible that there was some neuropathy related to the attenuated virus." *Id.* He added that he "would expect full resolution of sxs by 1 yr prn." *Id.*

In this case, to satisfy the Vaccine Act's severity requirement Petitioner must show that he suffered symptoms of his alleged SIRVA beyond April 25, 2019. The above medical entries show that at visits both prior to and after this date (February 6 and May 13, 2019, respectively) Petitioner reported a lack of current shoulder pain, but right shoulder pain when he slept. Exhibit 2 at 33-34. At the February 6, 2019 visit, he rated this nightly pain at a level of six out of ten. *Id.* at 33. Additionally, at both visits he exhibited a painful right shoulder arc upon examination. *Id.* at 33-34. Thus, while the symptoms he experienced were clearly mild and sporadic (and may accordingly only support modest damages), I find Petitioner experienced at least pain at night and pain with movement on May 13, 2019, more than six months post-vaccination.

In arguing against severity, Respondent emphasizes the approximately three-month gap between these two visits and Petitioner's report, on May 13th, that he had been symptom-free for two months. Rule 4(c) Report at 5. However, Respondent's arguments are ultimately not persuasive, for several reasons. First, a delay in treatment of three months is not unreasonable (especially given the mild and sporadic nature of the symptoms Petitioner suffered). It is hardly uncommon in SIRVA cases for claimants to delay treatment, where initially or throughout their injuries, based on the reasonable assumption that their post-vaccination pain may prove transient.

Second, the Vaccine Act does not require that a petitioner suffer *consistent* symptoms throughout the six-month period post-vaccination, but instead only that a petitioner suffer the residual effects or complications of the alleged injury for *more than six months* after administration of the vaccine. *See* Section 11(c)(1)(D)(i). In my experience adjudicating SIRVA claims, many petitioners experience some temporary relief during the duration of their injuries (for example, from a cortisone injection or physical therapy) or pain plateaus. Thus, even if Petitioner experienced a two month cessation of pain, as his statement indicates, such a temporary lack of symptoms would not preclude Petitioner from meeting the severity requirement.

Additionally, there are medical record entries which provide support for the proposition that Petitioner may *not* have been truly symptom free as he stated. In both February and May 2019, Petitioner reported a lack of pain, despite exhibiting a painful right shoulder arc. Exhibit 2 at 33-34. Given his propensity to ignore this pain with movement, Petitioner's statement could be interpreted as referring only to the nightly pain he had experienced in February, and was now reporting in May. Regardless of its accuracy, this statement is not sufficient to dictate a different finding.

Compared to other SIRVA injuries, Petitioner's right shoulder pain was plainly less severe. However, the mildness and sporadic nature of Petitioner's symptoms is a matter that goes to the ultimate quantum of damages to be paid. The fact that his injury was not especially acute does not undercut the determination that it nevertheless lingered for long enough to satisfy severity under The Act.

The overall record in this case shows Petitioner suffered at least nightly pain and a painful right shoulder arc as late as May 2019. Accordingly, I find there is preponderant evidence to establish Petitioner suffered the residual effects of his alleged SIRVA for more than six months.

## V.   Symptoms of a Neurologic Nature

Although I have determined there is sufficient evidence to establish that Petitioner suffered symptoms of his alleged SIRVA for more than six months post-vaccination, I have *not yet ruled* that Petitioner is entitled to compensation. As Respondent argues and several of Petitioner's treating physicians observed, some of the symptoms Petitioner suffered are indicative of a distinguishable neurologic injury. Rule 4(c) Report at 6; Exhibit 2 at 16, 39; Exhibit 3 at 11. However, the majority of symptoms he reported are those commonly seen in SIRVAs.

Additionally, it is possible that Petitioner suffered simultaneous conditions, related and unrelated to vaccination. The first right shoulder MRI, performed less than three months post-vaccination on January 9, 2019, revealed findings consistent with SIRVA, such as evidence of bursitis, tendinopathy, and a partial thickness rotator cuff tear at the infraspinatus tendon, as well as evidence of a possible tear at the shoulder labrum[6]. Exhibit 4 at 1-2. A second MRI, performed on July 10, 2019, however, showed only the glenoid labral tear previously seen. Exhibit 2 at 36; *see supra* note 6. Thereafter, Petitioner reported no right shoulder pain, only weakness. Exhibit 2 at 36.

Petitioner should consider this additional information and provide Respondent with a revised demand if needed, to take into account not only the overall mild character of his SIRVA but the fact that not all of his post-vaccination damages are compensable.

### VI.    Scheduling Order

In light of my finding regarding the Vaccine Act's severity requirement, the parties should attempt to informally resolve this case. **They shall file a joint status report regarding their efforts by no later than <u>Tuesday, September 14, 2021</u>**. In the status report, the parties should indicate whether they believe an informal settlement can be reached and if so, when they believe the case can be informally resolved.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[6] Labrum is "anatomic nomenclature for an edge, brim, or liplike part or structure. DORLAND'S at 995. Thus, this tear is located at the interior rim of the shoulder joint.